UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20429-CR-MARTINEZ/GARBER

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDUARDO HERNANDEZ, JR.,

    Defendant.
_____/

## ORDER

THIS CAUSE was before the Court by Order of Reference from United States District Judge Jose E. Martinez on the defendant Eduardo Hernandez's Motion for Rehearing and Reconsideration of Order Granting Motion to Disqualify Counsel. (DE 79.) This Court held a hearing on the motion to reconsider the district court's order on September 13, 2013 which was attended by Hernandez, his attorney Stephen H. Rosen, and government counsel, Assistant United States Attorney Robert J. Lehner.

The government filed, on July 31, 2013, its Motion to Disqualify Counsel for Defendant Eduardo Hernandez, Jr. (DE 70.) A week later, Judge Martinez held a status conference during which counsel for the defendant failed to present any substantive arguments responsive to the government's motion. Nor was any written response filed by Hernandez at that time. After the status conference, Judge Martinez granted the government's motion to disqualify. (DE 74.)

Upon reviewing the record in this case, along with Hernandez's motion for reconsideration (DE 79), the government's response (DE 87), Hernandez's reply thereto (DE 88), as well as post-hearing briefs filed by both parties (DE 95 & 97), the Court hereby DENIES Hernandez's motion

for the reasons set forth below.

I.   **Brief Factual Summary**

The government filed an indictment in this case, on June 13, 2013, alleging that Hernandez, represented in this case by attorney Stephen H. Rosen, and three co-defendants developed a scheme whereby they induced various straw buyers to submit false loan applications to various lenders to obtain fraudulent loans for the purchase of boats that, in most cases, did not exist. According to the government, the defendants were all in some way associated, whether as owners or operators, with companies that actually manufactured boats. This association appears to have facilitated the defendants' abilities to manipulate the lenders and perpetrate the fraudulent activity as alleged by the government.

One of the co-conspirators involved in the scheme, an apparent straw buyer, was Fernando Tolon. According to the information filed by the government, on March 7, 2013, against Tolon, Tolon and Hernandez collaborated on a scheme whereby they fabricated the purchase and sale of a non-existent boat. (Information, Case No. 13-20458-CR-UNGARO/TORRES, DE 1.) The two are alleged to have conspired to submit a sham bill of sale to the lender, falsely claiming that Tolon had made a deposit on the boat of $32,838, and falsifying Tolon's creditworthiness to the lender. According to the information, once Hernandez's boat company received the loan proceeds, Hernandez kicked back some of the funds to Tolon and other parties, as chosen by Tolon. Further, says the government, and most significant to the issues at play presently before the Court, Tolon and Hernandez also agreed that Tolon would file a false insurance claim, averring that the non-existent boat had been stolen. The proceeds from the fraudulent insurance claim, it appears, were then to be used to pay off most, if not all, of what Tolon owed the lender, which would then relieve him from

making the monthly loan repayments.

Neither party disputes that, at some point after Tolon had filed his insurance claim, but before filing a law suit on the claim, attorney Rosen, the same attorney who now represents the defendant Hernandez in this case, queried the insurance company, on Tolon's behalf, as to the status of Tolon's fraudulent boat-theft claim. Rosen's representation of Tolon, at least with respect to the claim inquiry, was memorialized in a fax dated the same day that the call was made. In the fax, Rosen stated, in part: "I have been retained to represent Fernando Tolon in the above referenced claim." (Govt's Mot, Exh. 1, DE 70-1, 1.) The fax also referenced the claim and policy numbers as well as the alleged date of the loss. Tolon was subsequently represented by other counsel in his law suit against the insurance company.

About a year later, the government began investigating Tolon in an unrelated mortgage fraud case. With respect to that matter, Rosen contacted, via email, the United States Attorney's office regarding a scheduled debriefing of Tolon. Rosen later cancelled that meeting and the government's attempt to reschedule was ultimately thwarted when Rosen sent him an email stating: "Mr. Tolon does not want to attend a briefing." (DE 70-3, 1.)

Tolon has since pled guilty, through the representation of other counsel, to the information filed in the fraudulent boat scheme case against him and is cooperating with the government in this, the related case, against Hernandez. His testimony before the grand jury has assisted the government in securing the indictment against Hernandez in this case, and Tolon is scheduled to testify as a cooperating witness at trial. Tolon has also pled guilty in the aforementioned mortgage fraud case and is currently serving his sentence in that case.

II. **Issue**

Based on Rosen's prior representation of Tolon and the government's plan to call Tolon as a witness, the government asks the Court to disqualify Rosen from representing Hernandez in the instant case due to what the government views as Rosen's clear conflict of interest. In response, Rosen focuses primarily on the limited nature of his representation of Tolon in the boat fraud case as well as the unrelatedness and limited representation of Tolon in the mortgage fraud case. Rosen also insists that Tolon never communicated any information to him that could be used against Tolon during cross-examination. Further, argues Rosen, Hernandez has agreed to waive any conflict issues.

III. **Discussion**

As an initial matter, Courts are afforded broad discretion in considering whether an attorney's conflicts of interest can be waived by a defendant. *U.S. v. McCutcheon*, 86 F. 3d 187, 189 (11th Cir. 1996). As the United States Supreme Court has set forth, a district court must be allowed this "substantial latitude" in refusing such waivers not only where there is an actual conflict, but also "where the potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat v. U.S.*, 486 U.S. 153, 163 (1987).

In its analysis of an alleged conflict, a trial court is urged to consider the rules and codes of professional responsibility: both the American Bar Association's model code and rules as well as the relevant state code and rules. *E.g.*, *Wheat*, 486 U.S. at 1697-98; *U.S. v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978); *U.S. v. Miranda*, 936 F. Supp. 945, 950 (S.D. Fla. 1996). Of particular interest in this case is Rule 4-1.9(a) of the Rules Regulating the Florida Bar which provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless

the former client give informed consent.

The term "substantially related" has been interpreted broadly such that the first matter isn't required to be "relevant" to the second matter in an evidentiary sense; rather, the first matter:

> need only be akin to the present action in a way reasonable persons would understand as important to the issues involved. . . . Where parts of the present action and past representation concern the very same subject matter, reasonable minds must agree they are substantially related.

*Kraft, Inc. v. Alton Box Board Co. (In re Corrugated Container Antitrust Litig.)*, 659 F.2d 1341, 1346 (5th Cir. Unit A Oct. 1981), *abrogated on other grounds by Gibbs v. Paluk*, 742 F.2d 181, 183 (5th Cir. 1984). Thus, so long as the first matter could reasonably be understood as important to the issues involved in the present matter, the matters are substantially related as required under Rule 4-1.9(a). Eleventh Circuit case law establishes that, once the movant has established this substantial relatedness, a court will "irrebutably presume that relevant confidential information was disclosed during the former period of representation." *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999).

Although the right to counsel of one's choice is an essential part of a defendant's Sixth Amendment right to counsel, that right is not absolute. And thus the Court must balance two competing Sixth Amendment rights: (1) one's right to be represented by counsel of one's choosing; with (2) the right to representation by an attorney who is free from conflicts of interest. *U.S. v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994). Ultimately, "the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards."

A.  **Rule 4-1.9(a)**

In parsing the plain language of Rule 4-1.9(a) of the Rules Regulating the Florida Bar, for a conflict of interest to arise the following elements must be met: (1) representation of client 1 in matter 1; (2) representation of client 2 in matter 2; (3) the interests of client 2 are materially adverse to the interests of client 1 in matter 2; (4) client 1 has refused to give his informed consent to the representation of client 2; and (5) matter 1 must be substantially related to matter 2 .

Only the last element is in dispute. (1) Rosen represented Tolon, at least in some capacity, in a prior matter. (2) Rosen now represents Hernandez in another matter, that being the instant case. (3) The interests of Hernandez, the defendant, are materially adverse to the interests of Tolon, who is a cooperating witness against Hernandez, in the instant case. And (4) Tolon has declined to give his informed consent to Rosen's representation of Hernandez.

Thus the Court turns its attention to whether Rosen's prior representations of Tolon are substantially related to the instant case. In doing so, the Court "must look behind mere facial similarities or dissimilarities between the prior and pending cases and focus on the precise nature of the subject matters presented in the two representations." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1031 (5th Cir. Unit B 1981).

Rosen's argument against a finding of substantial relatedness between his representation of Tolon and his representation of Hernandez boils down to essentially two arguments. First, he insists that, because Tolon imparted no confidential information to him, there can be no finding of a conflict. He bolsters his claim that absolutely "[n]othing was imparted to [him] in either case" by pointing out that the government offered nothing in contravention of his claim. Rosen, neglects, however, to recognize the irrebutable presumption set forth by controlling law that: once the

government has established a substantial relationship between the subject matters of the two representations, there is an irrebutable presumption that relevant confidential information was disclosed during the former period of representation. *Freund*, 165 F.3d at 859. Thus, although the Court has no reason to doubt the sincerity of Rosen's representations, the Court is concerned that such a nuanced relationship, as between attorney and client, is being painted by Rosen with too broad a brush. And it is just these sort of complications that the Court seeks to avoid when applying the irrebutable presumption to a case such as this. It simply isn't practical or fair to require the government or Tolon to prove with specificity the facts that Tolon may have disclosed to Rosen, or advice that Rosen may have imparted to Tolon, even if those facts or that advice might be characterized as inconsequential from Rosen's perspective. *Id*. Because of the irrebutable presumption, the Court will disregard Rosen's protestations that no information of any import was ever imparted to him by Tolon. In doing so, however, the Court notes that no negative implications should be inferred regarding Rosen's credibility in the matter.

Rosen's second line of argument against a finding of a substantial relationship between the matters is the brevity and perfunctory nature of his prior representation of Tolon. Rosen finds the government's reading of Rule 4-1.9(a) "hypertechnical" and complains that the government's "interpretation of [the rule] would artificially transform the most perfunctory former representation of the witness lasting mere minutes on July 6, 2011 into grounds to disqualify Hernandez's counsel of choice." (Def.'s Resp. DE 97, 3.) In making this argument, Rosen errs by equating breadth in time with substantiality and glosses over the fact that the very matter, in the case of the insurance claim, in which Rosen represented Tolon, is actually part of the alleged fraudulent scheme that Rosen's present client is being accused of and to which Tolon has already pled guilty. Thus, where the prior

representation is actually **part** of the fraudulent scheme at issue in the present case, no amount of brevity can seem to diminish the depth of connection between the matters. If the relationship between the matters was less significant, perhaps the brevity of the representation would impact the analysis. But such is not the case here.

With respect to Rosen's representation of Tolon in his separate mortgage fraud prosecution, Rosen again relies on the short-lived nature of the representation as well as his conclusory determination that the representation was unrelated to the boat fraud case against Hernandez. While perhaps Rosen's brief representation of Tolon in the investigative phase of an unrelated mortgage fraud case might not have amounted to enough to run afoul of Rule 4-1.9(a) in and of itself, in conjunction with his representation of Tolon in contacting the insurance company, it acts to further strengthen the ties between the prior matters and the present matter.

B.  **Integrity of the Judicial System and Waiver**

Though the Court does not find that the conflicts of interest at issue in this case would **necessarily** result in such deficient performance by counsel that the defendant would be irretrievably prejudiced, it does find the potential for peril so fraught that it is not a risk the Court is willing to take. Rosen focuses much of his argument on the premise that he received no privileged communications from Tolon and therefore would not be deterred from "intense probing of the witness on cross-examination." (Def.'s Mot. DE 79, 8 (quoting *Ross*, 33 F.3d at 1523).) In addition to the irrelevance of this claim, as discussed above in section III.A., there are even murkier issues at play. For one need only glimpse a snippet of a likely exchange during a trial in the case to realize the insurmountable obstacles that Rosen's representation of Hernandez presents. For imagine the impression that will be left when testimony is elicited from Tolon that: the very attorney representing

8

the defendant, against whom Tolon is testifying, was also the same attorney who helped facilitate communications, no matter how brief, between Tolon and his insurance company regarding the fabricated theft of his non-existent boat. And imagine the impression that will be left when testimony is elicited that the very attorney representing the defendant was also the same attorney who contacted, over a one-month-long exchange of emails, the United States Attorney's Office, the very same office now prosecuting the defendant, on Tolon's behalf, the cooperating witness, regarding yet another fraud case to which Tolon ultimately pled guilty. The court finds the mere specter of these scenarios untenable.

Though Rosen may have only the best of intentions, and the Court has no reason to believe he doesn't, the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict" even for the most practiced of attorneys among us, never mind the lay defendant. *Wheat*, 486 U.S. at 162. The heft of the conflicts of interest at play in this case, as well as the potential for conflicts of interest, combined with the appearance of impropriety, outweigh Hernandez's right to counsel of his choosing in this case. Further, it cannot be overlooked that Tolon's rights are owed protection as well and he has not waived his rights to those protections.

Based on the foregoing, the Court finds that Judge Martinez's initial ruling, granting the government's request that defense counsel be disqualified, should remain undisturbed. The Court therefore DENIES Hernandez's motion for reconsideration. (DE 79.)

DONE AND ORDERED in Chambers at Miami, Florida this 20th day of September 2013.

_/s/ Barry L. Garber_
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE